### C. & N. W. Ry. Co. v. Smith & Clark.

1.  COMMON CARRIER—*May Limit its Liability for Damages to Stock to Such Injuries as Occur While upon its Own Line of Road.*—A common carrier may, by special contract, limit its liability for damages to stock to such injuries as occur, or are inflicted, while upon its own line of road.

2.  INSTRUCTIONS—*As to Gross Negligence, Where None is Charged or Proved.*—It is improper for the court to instruct the jury as to what damages they may assess in case they find the defendant guilty of gross negligence, where there is no proof of gross negligence and the declaration does not charge it.

3.  PRACTICE—*Obtaining Leave to Amend, Not Equivalent to Doing so.*—Obtaining leave to amend is not equivalent to an amendment, and until it is in fact made, the pleading remains the same as if no leave had been given.

**Action in Case,** for injuries to stock while in transit.    Trial in the Circuit Court of Boone County; the Hon. CHARLES E. FULLER, Judge, presiding.    Verdict and judgment for plaintiff.    Appeal by defendant. Heard in this court at the December term, 1898.    Reversed and remanded.    Opinion filed April 11, 1899.

ROBERT W. WRIGHT, attorney for appellant.

WILLIAM L. PIERCE and CHARLES ROACH, attorneys for appellees.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case to recover damages for injuries inflicted upon eight horses and the killing of another, while being shipped over appellant's railroad from

Belvidere to Chicago, on January 19, 1898. There was a trial by jury, who returned a verdict in favor of appellees for $800. The court required appellees to remit $80 from the verdict, and this being done, a motion for a new trial was overruled and judgment rendered against appellant for $720 and costs, and it appeals to this court.

It appears from the evidence that the animals in question were part of a shipment of eleven horses, transported over appellant's railroad, in an Ames Horse Car, from Belvidere to the Union Stock Yards in Chicago. Some two hours after arriving at their destination it was discovered that one of the horses was killed and eight of the others were injured. The horses were shipped under a special contract in writing, signed by the parties, which limited appellant's liability for damages to such injuries only as were inflicted while they were upon its own line of road. The controversy in this case arises upon the question as to whether the horses were injured while in transit over appellant's road, or after their delivery to the Union Stock Yards Company in Chicago.

In numerous decisions of our Supreme Court, unnecessary to be cited here, it has been held that a common carrier may, by special contract, limit its liability for damages to stock to such injuries as occur, or are inflicted, while upon its own line of road. It is therefore important to ascertain, if possible, where the horses in question received their injuries. That the horses were not damaged between Belvidere and Chicago appears by the testimony of Neely Clark, one of the appellees, who accompanied the horses to Chicago, riding upon the same train on a stock pass issued to him by appellant. He swears that after the train arrived at Laurel street in Chicago, he went into the horse car, struck a match and inspected the horses, and they were then standing up eating, and all right. That he then left the car and walked toward the Trars't House, and while doing so, the car of horses, with an engine attached, passed by him, and he saw the car "kicked" back or shoved in on a side track against some other cars. That he heard a "racket"

in the cars but did not investigate to see what the trouble was, nor to ascertain if anything was the matter with the horses. This is the only testimony in the record which in any way attempts to fix the charge of negligence upon appellant. It can not be claimed it was unnecessary to set the car out upon the side track. That was the usual course pursued when stock was delivered to the Union Stock Yards Company; the only question is, was there any negligence in thus setting out the car, or the manner in which it was handled. Even Clark does not say it was set out or handled violently; what he does say is that the car was "kicked" back against some other cars standing on the track. Evidently the circumstances made no particular impression on his mind at the time, for although he claims to have heard a "racket" yet he did not deem it of sufficient importance to require any investigation on his part. On the other hand, if the weight of evidence is to count for anything in this class of cases, it very clearly preponderates in favor of the proposition that the car was not "kicked" back at all, but was set out upon the side track by the engine attached thereto, in a very careful and proper manner, upon a different track to that sworn to by Clark, and that the engine was not uncoupled therefrom until the car was stopped. A number of witnesses testify to these facts and we see no just reason why the jury should utterly disregard their testimony. While the jury are the judges of the credibility of the witnesses, and of the weight to be given to their testimony, yet this is to be taken in a reasonable sense, and with the limitation that they may not, from caprice or prejudice, wholly disregard the number of witnesses or the weight of the evidence.

From a careful examination of all the evidence we are forced to the following conclusions: 1. That the horses were uninjured when they arrived at Laurel street in the city of Chicago. 2. That a clear preponderance of the evidence shows the car to have been set out upon the side track in a careful and proper manner without any "kick-" ing or other violent handling. 3. That there is no proof

appellant in any manner handled the car or had anything to do with it after it was thus set out upon the side track, which was about 5:40 o'clock in the morning. At about 6:45 A. M. the car was moved by the Stock Yards Company to the " chute " at the stock yards, where it arrived about 7:30 A. M., and then it was first discovered that the horses were injured. What may have happened during the nearly two hours intervening the setting out of the car and its arrival at the "·chute " we can not tell, but there is no evidence connecting appellant with it in any way. 4. We think the allegations of negligence charged in the declaration are not sustained by the evidence and that a new trial should have been granted.

Under the declaration in this case we are of opinion it was improper for the court to instruct the jury as to what damages they might assess in case they found appellant guilty of gross negligence. There certainly was no proof of gross negligence nor did the declaration charge it. Appellees asked and obtained leave to amend so as to charge gross negligence, but it does not appear the amendment was ever in fact made. Obtaining leave to amend is not equivalent to an amendment, and until it is in fact made the pleading remains the same as if no leave had been given. (Wis. C. R. R. Co. v. Wieczorek, 151 Ill. 579.) But in this case the instructions appear to have done no harm. The question of gross negligence was only important as bearing upon the right of appellant to limit its liability for damages to the valuation of the horses specified in the contract as $100 per head, and the jury by their verdict only allowed that amount.

We find no other errors in the instructions, but because we hold that the evidence does not sustain the verdict, the judgment will be reversed and the cause remanded.